UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-00001 (BAH) |
| v. : | |
| : | |
| PAUL MODRELL, : | |
| : | |
| **Defendant** : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Paul Modrell to 14 days of intermittent incarceration as a condition of 36 months of probation, 60 hours of community service, and $500 in restitution.

**I.     Introduction**

Defendant Paul Modrell, a Navy veteran who has a Master of Science degree in environmental management, is 54 years old and works as a Planning Specialist with Montgomery County, Maryland Department of Environmental Protection. Mr. Modrell participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is

1

Modrell pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of incarceration is appropriate in this case because of Modrell's (1) early entry through a smashed-out broken window shortly after the initial breach of the Capitol building; (2) extended period of time inside the Capitol; (3) close proximity to violence against police in the Capitol; (4) travel through multiple areas inside the Capitol, including the hallway outside the Senate Gallery on the third floor; (5) apparent substantial minimization of the violence he encountered on January 6 when interviewed by FBI agents; and (6) failure to express remorse for his unlawful conduct on January 6.

Modrell entered the Capitol building through a broken window next to the Senate Wing Doors at 2:26 p.m., only about 13 minutes after other rioters first broke those windows and breached the building. Modrell traveled to the Crypt Lobby as other rioters yelled and chased officers down the stairs, throwing chairs at them and obstructing the fire doors from closing to allow the rioters freedom of movement. After this, Modrell remained in the Capitol for approximately 20 more minutes, going to the Grand Rotunda, the East Corridor and Senate Gallery hallways, all the while taking photos and videos of the on-going riot.

The Court must also consider that Modrell's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Modrell's crime support a sentence of incarceration.

---

also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

II.     **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 23 (Statement of Offense), at 1-4.

*Defendant Modrell's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Modrell traveled on the Washington Metro from his home in Columbia, Maryland to Washington, D.C. to attend former President Trump's speech at the Ellipse. Modrell wore a brown coat with a navy-blue baseball hat. Upon arriving, Modrell went to the area of the speech and walked around near the Washington monument as seen below in Image #1.



*Image # 1 Open-source footage from the Washington Monument*

After leaving the Washington Monument grounds, Modrell walked towards the U.S. Capitol building and onto the west side of the Capitol grounds.



*Exhibit # 1 at 21 seconds open-source video of the west front*

As Modrell was on the West front, police deployed tear gas into the crowd. The person recording the video in Exhibit # 1 ("TheResistance.Video," open-source video on West Front), continued moving northeast of Modrell's position where both the person recording and others in the crowd described hearing blasts from, and smelling the effects of, tear gas. After moving away from Modrell's position for only 35 seconds, the person recording captured smoke being deployed into the crowd which the person recording and others in the crowd described as "tear gas."



*Exhibit # 1 at 55 seconds smoke from tear gas*

Meanwhile, other rioters advanced on the building and smashed windows on either side of the Senate Wing Doors to gain entry to the Capitol building. The Capitol building was first breached at approximately 2:13 p.m. at this location by a rioter who jumped through the window over the broken glass, as shown in Image #2:



*Image # 2 CCTV from Senate Wing Doors*

Approximately 13 minutes later, Modrell climbed through the shattered window to the right of the Senate Wing Doors as depicted below in Image #3. Immediately after entering, Modrell began taking photographs or videos on his cell phone before walking down the hallway on the left side of Images ## 3 and 4.



*Image # 3 CCTV from Senate Wing Doors*



*Image # 4 CCTV from Senate Wing Doors*

At this time the crowd of rioters vastly outnumbered the police inside the building. Modrell made his way to the Crypt Lobby in between the Crypt and the stairwell to the Capitol Visitor Center. For about 30 seconds, other rioters threw objects at the police and interfered with the fire doors, preventing them from closing as the police tried to retreat to safety. The crowd, including Modrell, charged forward and police retreated down the stairs to the Capitol Visitor Center. Approximately 15 feet from Modrell (circled in yellow in Exhibit #2 (CCTV from the Crypt Lobby) another rioter (circled in red) sprayed officers with what appeared to be a chemical irritant. Seconds before that, others threw trash cans and chairs at the police and tried to jam objects into the closing fire doors. Exhibit #3 (cell phone footage from another rioter) depicts Modrell in the crowd of rioters as they advanced through the Crypt Lobby and towards the Capitol Visitor Center.  Four seconds before Modrell appears in the video in Exhibit # 3, another rioter at the top of the stairs threw yet another chair down the stairs towards the retreating Capitol Police officers.



*Exhibit # 2 at 41 seconds CCTV from Crypt Lobby*



*Exhibit # 3 at 28 seconds Cell phone video of Modrell in the crowd of rioters*

Despite being in close proximity to these acts of violence against police, Modrell stayed inside the building for more than 20 minutes. He traveled upstairs to the second floor and walked through the Rotunda. He then ascended to the third floor where he walked around the East Corridor and in the hallways outside the Senate Gallery. As he moved far and wide through the Capitol, he took video or photos of the riot, as other rioters around him chanted in procession, carrying signs and flags in demonstration against the outcome of the 2020 Presidential election.



*Image # 8 CCTV from the Rotunda*



*Image # 9 CCTV from the Rotunda stairs*



*Image # 10 CCTV from East Corridor*



*Image # 11 CCTV from Senate Gallery Lobby*

Modrell went back downstairs and exited through the Senate Carriage Doors on the East side of the building at 2:51 p.m. – approximately 25 minutes after he first entered.



*Image # 12 CCTV from Senate Carriage Doors*

11

*Defendant's Interview*

At the time of his arrest, Modrell agreed to an interview with FBI agents. During that interview, Modrell identified himself in photographs from inside the Capitol building and admitted to entering the building. Modrell stated that he did not witness any acts of violence or destruction of property during his approximately 25 minutes inside the Capitol building, with the exception of someone who knocked over a stanchion post. That is highly dubious, as Modrell was in very close proximity to other rioters when they threw trash cans, chairs, or other objects at police, and sprayed police officers with chemical irritants. Those were remarkable events which a bystander would be sure to notice and remember if they occurred anywhere in their field of perception.

Despite entering through a shattered window, being near the deployment of chemical irritants on the West Front, and violence in the Crypt Lobby, Modrell downplayed the severity of the of the January 6 riot. Indeed, remarkably, he described his experience at the Capitol as peaceful and claimed that the event had a "calm vibe." Nor has Modrell expressed sincere remorse for his unlawful conduct on January 6. *See* PSR ¶ 21 (during his interview with the Probation Officer, Modrell "agreed with conduct described in the Statement of Offense" but "did not comment further").

*The Charges and Plea Agreement*

On December 9, 2022 the United States charged Modrell by criminal complaint with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). On December 20, 2022, law enforcement officers arrested him at the FBI Field Office in Baltimore, Maryland. On January 4, 2023, the United States charged Modrell by a four-count Information with violating the above statutes. On June 2, 2023, pursuant to a plea agreement, Modrell pleaded guilty to Count

4 of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Modrell agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Modrell now faces sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Modrell faces up to six months of imprisonment and a fine of up to $5,000. He must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of home detention.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Modrell's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Modrell, the absence of violent or destructive acts is not a mitigating factor. Had Modrell engaged in such conduct, he would have faced additional criminal charges.

Modrell traveled far and wide in the Capitol building for approximately 25 minutes, including at times and in places where other rioters committed violent acts in close proximity to Modrell, particularly in the Crypt Lobby. Although Modrell told the FBI that he did not recall observing any violence on January 6, that is hard to square with his presence in areas where violence was rampant. He entered the Capitol through a broken window within 15 minutes of other rioters smashing out the glass during the initial breach of the Capitol. But Modrell has to date not expressed remorse for contributing to one of the darkest days in this country's history. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration.

### B. The History and Characteristics of Modrell

As set forth in the PSR, Modrell does not have a criminal history. Modrell served in the U.S. Navy for approximately four years, attaining the rank of Petty Officer Third Class before he was honorably discharged in 1993. While Modrell's military service is laudable, it renders his conduct on January 6 all the more troubling. As a former member of the military, Modrell was well aware that citizens cannot enter restricted government buildings, and that violent actions by a mob against vastly numbered police officers seeking to protect that building created very grave dangers.

Modrell has received a Master's degree and was employed at the time of his arrest by Montgomery County, Maryland Department of Environmental Protection as a Planning Specialist III. As such, he presumably had the capacity for critical thinking and judgment not to be gulled by lies of a stolen election that may have fooled other rioters without the same level of education or experience.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Although Modrell has no criminal history, his conduct on January 6 and his statements to the FBI demonstrate the need for some specific deterrence that is best achieved by a limited term of incarceration. Modrell's statement minimized the events of January 6, 2021 and indicates a lack of remorse.

### E. The Need to Avoid Unwarranted Sentencing Disparities

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case. As shown below, this court has repeatedly sentenced January 6 defendants who pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) and who engaged in conduct like Modrell's to relatively modest but meaningful terms of incarceration. Given that the rioters relied on numbers to overwhelm Capitol police, Modrell's presence in the Crypt Lobby added to police officers' inability to control the situation there.

In *United States v. Dawn Munn,* 21-cr-00474, your Honor sentenced the defendant to 14 days of intermittent confinement and 90 days of home detention as conditions of 36 months probation. Similar to Modrell, the defendant in that case entered through a broken window near the Senate Wing doors at approximately 2:25 p.m. Similar to Modrell, the defendant in *Munn* witnessed acts of violence against police in the Crypt and Capitol Visitor Center Area at around 2:30 p.m. Just like Modrell, despite seeing this violence, the defendant continued to roam the Capitol building. The defendant in that case ultimately spent approximately 52 minutes inside of the building.

In *United States v. Jean Lavin, 21-cr-596-BAH,* your Honor sentenced the defendant to 10 days of intermittent incarceration as a condition of 36 months' probation. Similar to Modrell, the defendant in that case entered the Senate Wing Door area at 2:24 p.m. and remained in the Capitol for 32 minutes. Similar to the activity Modrell was near in the Crypt Lobby, the defendant in *Lavin* was in the Crypt when the rioters stormed past officers and overwhelmed them. Both Modrell and

Lavin remained inside the Capitol for significant periods of time after being in close proximity to violence against law enforcement. While Modrell has minimized January 6, 2021 as a whole in his custodial statement, the defendant in *Lavin,* attempted to shift blame for their actions to the U.S. Capitol Police.

In *United States v. Carson Lucard,* 22-cr-00087, your Honor sentenced the defendant to 21 days of intermittent confinement and 60 days home confinement as conditions of 36 months of probation. Similar to Modrell, the defendant in *Lucard* entered the building through a shattered window adjacent to the Senate Wing door shortly after the initial breach. Unlike Modrell, the defendant in *Lucard* exited after approximately 15 minutes and reentered the building. During this second entry the defendant in *Lucard* entered Senator Merkley's Office and took pictures of the destruction there. Similar to Modrell walking through the Rotunda, East Corridor and hallway outside the Senate Gallery, over the course of 25 minutes, the defendant in *Lucard* spent approximately 23 total minutes in the Capitol during two different entries.

V.    **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[2] Generally, restitution under the VWPA must "be tied to the loss

---

[2] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Modrell must pay $500 in restitution, which reflects in part the role Modrell played in the riot on January 6.[3] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Modrell's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 14 days of intermittent incarceration as a condition of 36 months of probation, 60 hours of community service, and $500 in restitution.

---

[3] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  s/ *Kyle R. Mirabelli*
Assistant United States Attorney
Capitol Siege Section
N.Y. Bar No. 5663166
601 D St. NW
Washington, D.C. 20001
Office: 202-252-7884

**CERTIFICATE OF SERVICE**

On this 25th day of August, 2023 a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

    /s/ *Kyle R. Mirabelli*
Assistant United States Attorney
Capitol Siege Section
N.Y. Bar No. 5663166
601 D St. NW
Washington, D.C. 20001
Office: 202-252-7884